**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**MILTON KELLY,**

**Plaintiff,**

   **vs.**         **Case No. 4:13cv340/RH/MD**

**CAROLYN W. COLVIN,**
**Action Commissioner of the**
**Social Security Administration,**

**Defendant.**

_____

### REPORT and RECOMMENDATION

   This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Rules 72.1(A), 72.2(D) and 72.3 of the local rules of this court relating to review of administrative determinations under the Social Security Act and related statutes.  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying claimant Kelly's application for a period of disability and disability insurance benefits under Title II of the Act.

   Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

## PROCEDURAL HISTORY

Plaintiff, Milton Kelly, filed an application for benefits claiming an onset of disability as of May 6, 2010.   The application was denied initially and on reconsideration, and Mr. Kelly requested a hearing before an administrative law judge (ALJ).   A hearing was held on August 20, 2012 at which Mr. Kelly was represented by a non-attorney representative and testified.   The ALJ entered an unfavorable decision (Tr. 22-31), and Mr. Kelly requested review by the Appeals Council without submitting additional evidence.   The Appeals Council declined review (Tr. 1-6).   The Commissioner has therefore made a final decision, and the matter is subject to review in this court.   *Ingram v. Comm'r of Soc. Sec. Admin*, 496 F.3d 1253, 1262 (11th Cir. 2007); *Falge v. Apfel*, 150 F.3d 1320 (11th Cir. 1998). This timely appeal followed.

## FINDINGS OF THE ALJ

Relative to the issues raised in this appeal, the ALJ found that Mr. Kelly has severe impairments of degenerative disc disorder and right ankle pain; that he does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1; that he has the residual functional capacity to perform light work with some limitations and can perform the duties of his past relevant work as a floor technician; that he was 48 years old at the time of his application, a younger individual; that he has a ninth grade education and can communicate in English; that there are jobs that exist in significant numbers in the national economy that Mr. Kelly can perform; and that he has not been disabled as defined in the Act since May 6, 2010.

## STANDARD OF REVIEW

In Social Security appeals, this court must review de novo the legal principles upon which the Commissioner's decision is based.  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986)). There is no presumption that the Commissioner followed the appropriate legal standards in deciding a claim for benefits, or that the legal conclusions reached were valid.  *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996); *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002).  Failure either to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

The court must also determine whether the ALJ's decision is supported by substantial evidence.  *Moore*, 405 F.3d at 1211 (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)).  Even if the proof preponderates against the Commissioner's decision, it must be affirmed if supported by substantial evidence.  *Ingram*, 496 F.3d at 1260;  *Miles*, 84 F.3d at 1400.  Substantial evidence is more than a scintilla but less than a preponderance, and encompasses such relevant evidence as a reasonable person would accept as adequate to support a conclusion. *Moore*, 405 F.3d at 1211 (citation omitted).  In determining whether substantial evidence exists, the court  must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). This limited review precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence. *Moore*, 405 F.3d at 1211 (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  Findings of fact of the Commissioner that are supported by substantial evidence are conclusive.  42 U.S.C. § 405(g); *Ingram*, 496 F.3d at 1260.

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment

which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A). To qualify as a disability, the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

The Social Security Regulations establish a five-step evaluation process to analyze claims for both SSI and disability insurance benefits.  *See Moore,* 405 F.3d at 1211;  20 C.F.R. § 416.920 (2009) (five-step determination for SSI); 20 C.F.R. § 404.1520 (2009) (five-step determination for DIB).  A finding of disability or no disability at any step renders further evaluation unnecessary.  *See* 20 C.F.R. § 416.920;  20 C.F.R. § 404.1520.  The steps are:

1.    Is the claimant currently engaged in substantial gainful activity?

2.    Does the claimant have any severe physical or mental impairment that meets the duration requirement?

3.    Does the claimant have any severe impairments that meet or equal those listed in Appendix 1 to subpart P of 20 C.F.R. Part 404 and meet the duration requirement?

4.    Considering the claimant's residual functional capacity, can the claimant perform past relevant work?

5.    Can the claimant perform other work given the claimant's residual functional capacity, age, education and work experience?

*Id.*

These regulations place a very heavy burden on the claimant to demonstrate both a qualifying impairment or disability and an inability to perform past relevant work. *Moore,* 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir.1985)).  If the claimant establishes such an impairment, the burden shifts to the Commissioner at step 5 to show the existence of other jobs in the national economy

which, given the claimant's impairments, the claimant can perform. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); *Allen v. Bowen,* 816 F.2d 600, 601 (11th Cir. 1987). If the Commissioner carries this burden, claimant must prove that he cannot perform the work suggested by the Commissioner. *Doughty,* 245 F.3d at 1278 n.2; *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

## PLAINTIFF'S MEDICAL HISTORY

On October 22, 2009, Mr. Kelly tripped in a hole, twisting his right ankle. Emergency room personnel noted swelling and a limited gait. Mr. Kelly was discharged with crutches (Tr. 216-17). He reported improvement in pain with Vicodin (Tr. 259). On November 2 and 10, 2009, he sought treatment for worsening pain and a gout flare in his right foot (Tr. 255, 257). His foot pain was persistent, severe, and caused instability, limping, spasm, swelling, tenderness, weakness, and nighttime awakening (Tr. 257). He also reported his blood pressure medication, Lisinopril, made him dizzy (Tr. 255). Vicodin was prescribed, and Lisonopril and Indomethacin were continued (Tr. 256).

A November 3, 2009, right ankle MRI identified a strain or partial tear involving the anterior talofibular and calcaneofibular ligaments, a strain or partial tear of the medial and anterior aspect of the deltoid ligament, a ganglion cyst, Achilles tendon paratendinitis, a possible strain of the peroneus bravis tendon, and ankle joint swelling (Tr. 287-88).

On November 14, 2009, Mr. Kelly first saw podiatrist Robert Pearson, DPM due to right foot pain. A walking cast and Voltaren were prescribed (Tr. 341).

On December 3, 2009, Mr. Kelly reported that over the counter medications were helping with his ankle pain, but he continued to have swelling, and the ankle sprain caused a flare in his gout (Tr. 253). Indomethacin and Vicodin were continued (Tr. 254). On December 15, 2009, Dr. Pearson saw Mr. Kelly for continuing right foot pain, although he had improved with the walking cast. He also complained of longstanding burning and tingling of his feet, in addition to the recent ankle injury (Tr. 340).

Mr. Kelly sought treatment for right foot pain on January 19 and February 23, 2010, and was prescribed Mobic with a neurotopical medication.  However, he was unable to fill the prescription for the neurotopical medication (Tr. 338-39).

A January 20, 2010, MRI identified diffuse soft tissue swelling throughout the lateral aspect of the foot, with involvement of both the deep and superficial soft tissues.  The reviewing radiologist noted there was either an infection or a significant ankle injury (Tr. 224).

On April 6 , 2012, Mr. Kelly saw Dr. Pearson for continuing but improved pain of the right ankle, and was prescribed Mobic (Tr. 336).  On April 22, 2010, he sought treatment due to increased ankle pain.  He requested more Vicodin due to the exacerbation of pain at work due to the use of heavy machinery.  The physician recommended physical therapy, and Mr. Kelly stated he would discuss staying off work for a few weeks with Dr. Pearson (Tr. 245).

Mr. Kelly was evaluated for physical therapy services on May 12, 2010 due to his right ankle dysfunction and pain, with the objective of returning to his prior job (Tr. 225-26).  He was still using a walking boot (Tr. 225).  The assessment was decreased strength, range of motion, lower extremity function, and ambulatory ability, with edema and muscle guarding.  The symptoms were deemed to be severe in nature (indicating pain, swelling of more than 2cm, less than 50% range of motion, or a severe limp) (Tr. 227).  On the same day, Dr. Pearson completed a Short-Term Disability Claim Form, indicating Mr. Kelly had a sprain which would not improve without therapy and rest.  He opined Mr. Kelly was limited to occasionally carrying up to 10 pounds, and could sit frequently, but could only occasionally stand and walk, with no kneeling, bending, squatting, or stooping (Tr. 309).  In an FMLA certification, Dr. Pearson recommended Mr. Kelly "stop work for now and demobilize the foot except for physical therapy." (Tr. 318).

Mr. Kelly's FMLA leave began on May 13, 2010, and on May 23, 2010, he sought medical treatment for complications when attempting to work while in a walking cast shoe (Tr. 239).

On June 14 and 15, 2010, Mr. Kelly continued to seek treatment for his right ankle pain, but his left foot and knee were also swollen and painful due to gout symptoms.   His medications were Vicodin for pain, Mobic, Gabapentin, and Indomethacin (Tr. 234-38, 335).  Dr. Pearson noted that Mr. Kelly's pain had improved since he had taken time off work, but that he might require surgical correction of the tendons (Tr. 335).

On July 12 and July 27, 2010, Mr. Kelly saw Dr. Pearson due to continued right ankle pain. Dr. Pearson felt he was at risk for reinjury, and may possibly need surgery for a tendon repair if the pain continued.  Range of motion was slightly guarded, although swelling had decreased (Tr. 333-34).

On August 31, 2010, Mr. Kelly reported continued pain and difficulty walking, and that he had tried several braces without improvement (Tr. 300).   Dr. Pearson noted that Mr. Kelly had improved a little bit since his last visit; however, "the more he is up on his foot the more pain he could have."  An Arizona brace was prescribed, and it was noted that surgical intervention was an absolute last resort.  Dr. Pearson felt that Mr. Kelly did have a longitudinal tear of the peroneal tendons of the lateral aspect of the foot, "interfering with his ability to stand comfortably for extended periods of time." (Tr. 323).  Dr. Pearson further noted that Mr. Kelly could return to work on September 1, 2010, but he could not lift more than 15 pounds, could not climb ladders, and must wear the right ankle brace at all times (Tr. 322).

On October 12, 2010, Dr. Pearson completed a Supplementary Report of Disability for Mr. Kelly's short-term disability insurance carrier.  He noted Mr. Kelly had pain with range of motion of his right foot, had been referred for a consultation for orthosis/boots, and had a tendon tear in the lateral ankle.  He opined that although Mr. Kelly could sit for eight hours in a workday, he could only stand three hours and walk two hours.  He further noted limitations in lifting and carrying up to 10 pounds frequently and 20 pounds occasionally, with limitations in the use of feet in repetitive motions, squatting, crawling, and climbing, and that "the more he is on his foot, the worse this could be or reinjury [could result]." (Tr.305-07).

On October 19, 2010, Mr. Kelly again saw Dr. Pearson complaining of continuing right foot pain.  He was still using a temporary brace while awaiting the Arizona brace (Tr. 331).  On October 26, 2010, he reported continued ankle swelling, which he attributed to the brace he was using (Tr. 299).

On January 24, 2011, Mr. Kelly again reported right ankle pain (Tr. 360).  On February 10, 2011, he sought treatment due to burning foot pain during the previous month.  He noted this was a longstanding issue for which he was prescribed Neurontin.  He also reported chronic low back pain and swelling.  Peripheral neuropathy with a rule-out diagnosis of entrapping neuropathy from chronic low back pain was noted (Tr. 369).

On February 28, 2011, Mr. Kelly was examined by Wayne Sampson, M.D. at the Commissioner's request.  Mr. Kelly reported right ankle pain despite a walking boot and steroid injections.  He reported pain with all weight-bearing activities, and severe pain and swelling if standing for more than an hour (Tr. 351). He also reported low back pain with repeated activity, and gout flares (Tr. 352).  Dr. Sampson noted decreased motor strength of the right foot, a slight limp, and swelling of the right ankle with pain with range of motion. His diagnosis was chronic right ankle pain (Tr. 352-53).

On March 29, 2011, Mr. Kelly returned to Dr. Pearson, reporting that he had finally received the Arizona brace and was doing better, and was able to walk on his foot more, with less swelling (Tr. 361).  Dr. Pearson wrote a letter stating he had treated Mr. Kelly's right leg pain for over a year.  He indicated Mr. Kelly was using an Arizona brace, and had "a chronic condition and the patient is not recommended to work on his feet or do significant lifting or any type of ladder work" and although he "should be able to do some desk work[,] something requiring him to be on his feet for many hours will increase the risk of hurting the tendon and cause increased pain and possible deformity of the foot."  Therefore, he recommended only a "desk position with minimal lifting at this point[.]" (Tr. 358).

On April 5, 2011, a lumbar spine MRI identified a disc herniation at L4-5 with impingement of the L4 nerve roots, with additional mild annular bulges at L2 through S1 (Tr. 367).  On May 6, 2011, Mr. Kelly again reported severe low back pain starting in approximately December 2010 (Tr. 375).  The MRI was reviewed, and Mr. Kelly's pain was deemed likely discogenic.  He was prescribed Norco and advised to exhaust all non-surgical remedies first (Tr. 378).

On May 26, 2011, non-examining State agency physician Bettye Stanley, D.O. opined that Mr. Kelly could perform light exertional activity (Tr. 382).  She noted Dr. Pearson's opinion, but gave it minimal weight (Tr. 387).

By June 3, 2011, Mr. Kelly had attempted physical therapy for his back pain, but his symptoms had worsened. Mr. Kelly was referred to pain management due to the degenerative abnormalities in the two lowest lumbar discs (Tr. 389-91).

On August 3, 2011, Mr. Kelly began treatment with Kendall Campbell, M.D. for ankle and back pain.  He reported breakthrough burning pain despite Neurontin, and ongoing issues with the right ankle.  Dr. Campbell also noted muscle spams, and increased the Neurontin dosage (Tr. 420).

Mr. Kelly sought emergency care for severe back and neck pain on September 8, 2011 (Tr. 397-98). On October 18, 2011, Dr. Pearson issued another statement, explaining that Mr. Kelly had known neuropathic-type pain in his feet since 2007, which was treated with Lyrica.  He also noted Mr. Kelly's 2009 right ankle tendon injury, and treatment for gout with other medical providers.  He noted Mr. Kelly was to use an ankle brace "to his tolerance" but if his conditioned worsened, he would need surgery to repair the tendon (Tr. 392).

On October 20, 2011, Mr. Kelly saw José Rodriguez, M.D., of Dr. Campbell's clinic, due to ongoing right ankle pain.  He was instructed to obtain Lortab through pain management, and was referred to charity care (Tr. 421-23).

On December 7, 2011, Mr. Kelly returned to Dr. Campbell due to ongoing back pain.  He was unable to see a specialist or receive physical therapy due to lack of insurance.  He was also taking so many anti-inflammatory medications he was

having renal insufficiency.  Further evaluation was ordered, and Mr. Kelly was instructed to stop taking all NSAIDs due to his creatine levels (Tr. 425).

A January 10, 2012, thoracic spine X-ray identified minimal endplate osteophyte formations at multiple levels with some scoliosis (Tr. 431).  An April 18, 2012 thoracic spine X-ray identified mild endplate osteophyte formation (Tr. 417). On May 18, 2012, Mr. Kelly returned to Dr. Rodriguez for ongoing back pain, which had resulted in two interim emergency room visits. He said Tramadol did not help the back pain, and Dr. Rodriguez felt Mr. Kelly's back pain was not under good control and continued to be a problem.  He noted X-rays demonstrated osteophyte formation, but nothing to explain the acute pain. Although Mr. Kelly needed pain management, he was not able to pay out of pocket nor was he eligible for charity care.  Dr. Rodriguez recommended that Mr. Kelly use indomethaxin for both his gout and back pain, in addition to Neurontin (Tr. 415).  Dr. Rodriguez opined that Mr. Kelly would be unable to sustain work activity for eight hours daily, or a 40 hour workweek (Tr. 414).  He noted that Mr. Kelly could carry less than 10 pounds even on an occasional basis, and could not ambulate effectively on a sustained basis (Tr. 412). He would have to alternate between sitting and standing.  Mr. Kelly's low back pain limited his motion as well as his ability to remain in one place, and the right foot tendon injuries severely affected walking.  He further opined that Mr. Kelly could never perform postural activities (Tr. 413).

## DISCUSSION

Mr. Kelly argues that the ALJ erred in (1) erroneously rejecting the opinion of treating physicians, (2) making a credibility determine that was not supported by substantial evidence, and (3) making unsupported Step Four and Five determinations, and that he was disabled from his onset date.  The Commissioner argues that the ALJ's findings were supported by substantial evidence and must, therefore, be sustained.  The issue thus presented is whether the ALJ's decision that Mr. Kelly was not disabled, in light of his physical condition, age, education, work

experience, and residual functional capacity, is supported by substantial evidence in the record.

     1.    <u>Opinions of treating physicians.</u>

     Mr. Kelly contends that the ALJ erred in discounting the opinions of the treating podiatrist and physicians.  Absent good cause, the opinion of a claimant's treating physician must be accorded considerable or substantial weight by the Commissioner.  *Phillips v. Barnhart*, 357 F.3d 1232, 1240-1241 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Broughton v. Heckler*, 776 F.2d 960, 960-961 (11th Cir. 1985); *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986).  "Good cause" for discounting a treating physician's opinion exists when:  (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.  *Phillips,* 357 F.3d at 1241; *see also Lewis*, 125 F.3d at 1440 (citing cases).

     If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).  Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnor v. Bowen,* 816 F.2d 578, 582 (11th Cir. 1987).  When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical impairments at issue; and (6) other factors which tend to support or contradict the opinion.  20 C.F.R. 404.1527(d).

The opinion of a non-examining physician is entitled to little weight, and, if contrary to the opinion of a treating physician, is not good cause for disregarding the opinion of the treating physician, whose opinion generally carries greater weight. *See* 20 CFR § 404.1527(d)(1); *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985); *Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); *Hurley v. Barnhart*, 385 F.Supp.2d 1245, 1255 (M.D.Fla. 2005).   However, a brief and conclusory statement that is not supported by medical findings, even if made by a treating physician, is not persuasive evidence of disability.  *Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987); *Warncke v. Harris*, 619 F.2d 412, 417 (5th Cir. 1980).

"When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons." *Phillips*, 352 F.3d at 1241.    Failure to do so is reversible error.  *Lewis*, 125 F.3d at 1440 (citing *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986));[1] *see also Nyberg v. Comm'r of Soc. Sec.*, 179 Fed.Appx. 589, 591 (11th Cir. 2006) (Table, text in WESTLAW)(also citing *MacGregor*).

Mr. Kelly contests the ALJ's finding that "[a]lthough Dr. Person's (sic) assessments support a finding of "not disabled," the undersigned finds the claimant not as limited based on the overall evidence received at the hearing level." (Tr. 28-29).  He contends that this is insufficient as a rationale for not giving greater weight to the treating physicians' opinions.  The undersigned disagrees.

The ALJ devoted four single-spaced pages to outlining Mr. Kelly's medical history, noting, among other things, that (1) "[m]any of the allegations and symptoms alleged by the claimant appear to be disproportionate to the expected severity and duration that would be reasonably expected on the basis of the claimant's medically determinable impairments"  (Tr. 26), (2) Mr. Kelly's hearing testimony was not in accord with the objective medical evidence (*id.*), (3) Mr. Kelly had no problem with house cleaning, laundry, shopping, driving, yard work,

---

[1] *MacGregor* further held that "Where the [Commissioner] has ignored or failed properly to refute a treating physician's testimony, we hold as a matter of law that he has accepted it as true." 786 F.2d at 1053.

gardening and home maintenance (*id.*), (4) Mr. Kelly's ankle responded to conservative treatment and in April 2010 Mr. Kelly had minimal swelling with decreased pain (Tr. 27), (5) Mr. Kelly's gait was normal when he saw Dr. Lee in May, 2011 (*id.*), (6) MRI scans of Mr. Kelly's thoracic spine were generally unremarkable and revealed no evidence of fracture and/or subluxation (*id.*), and (7) Mr. Kelly's credibility was diminished to the extent that it disagreed with observations of generally stable findings (*id*).

The central thrust of Mr. Kelly's argument refers to one of the ALJ's *conclusions* concerning credibility (which he quotes, in part, from the record), and urges this court to believe that the conclusion contains the entirety of the ALJ's reasoning. Mr. Kelly may find it convenient to ignore the analysis that precedes and follows the quoted conclusion, but the undersigned does not. The ALJ adequately explained his reasoning, as noted above. He did not err, and Mr. Kelly is not entitled to relief on this ground.

2.   <u>Credibility of Mr. Kelly's testimony.</u>

Mr. Kelly next contends that the ALJ's credibility determination was not supported by substantial record evidence. As this court is well aware, pain is treated by the Regulations as a symptom of disability. Title 20 C.F.R. § 404.1529 provides in part that the Commissioner will not find disability based on symptoms, including pain alone, ". . . unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce these symptoms." *Accord* 20 C.F.R. § 416.929. The Eleventh Circuit has articulated the three-part pain standard, sometimes referred to as the *Hand*[2] test, as follows:

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either

---

[2]***Hand v. Bowen***, 793 F.2d 275, 276 (11th Cir.1986) (the case originally adopting the three-part pain standard).

(a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *Adamo v. Commissioner of Social Sec.,* 365 Fed. Appx. 209, 2010 WL 476691, *3+ (11th Cir. 2010) (quoting *Wilson*) (Table, text in WESTLAW); *Elam v. Railroad Retirement Bd.*, 921 F.2d 1210, 1216 (11th Cir. 1991).

The Eleventh Circuit has also approved an ALJ's reference to and application of the standard set out in 20 C.F.R. § 404.1529, because that regulation "contains the same language regarding the subjective pain testimony that this court interpreted when initially establishing its three-part standard."  *Wilson, supra*, 284 F.3d at 1226. Thus, failure to cite to an Eleventh Circuit standard is not reversible error so long as the ALJ applies the appropriate regulation.

But "[w]hile both the Regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself."  *Elam*, 921 F.2d at 1215. The Eleventh Circuit has held that "pain alone can be disabling, even when its existence is unsupported by objective evidence."  *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)(citing *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992)); *Walker v. Bowen*, 826 F.2d 996, 1003 (11th Cir. 1987); *Hurley v. Barnhart*, 385 F.Supp.2d 1245, 1259 (M.D.Fla. 2005).  However, the presence or absence of evidence to support symptoms of the severity claimed is a factor that can be considered. *Marbury*, 957 at 839-840;  *Tieniber v. Heckler,* 720 F.2d 1251, 1253 (11th Cir. 1983).

Finally, if the Commissioner refuses to credit subjective testimony of the plaintiff concerning pain he must do so explicitly and give reasons for that decision. *MacGregor*, 786 F.2d at 1054.   Where he fails to do so, the Eleventh Circuit has stated that it would hold as a matter of law that the testimony is accepted as true. *Holt*, 921 F.2d at 1223; *MacGregor*, 786 F.2d at 1054.  Although the Eleventh Circuit does not require an  explicit finding as to a claimant's credibility, the implication

must be obvious to the reviewing court.  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable the reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole.  *Dyer*, 395 F.3d at 1210 (11th Cir. 2005) (internal quotations and citations omitted).  And of course, the reasons articulated for disregarding the plaintiff's subjective pain testimony must be based upon substantial evidence. *Wilson*, 284 F.3d at 1225-1226; *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991); *Hurley*, 385 F.Supp.2d at 1259.

Underlying the *Hand* standard is the need for a credibility determination concerning a plaintiff's complaints of pain.  Those complaints are, after all, subjective.  "[T]he ascertainment of the existence of an actual disability depend[s] on determining the truth and reliability of [a claimant's] complaints of subjective pain."  *Scharlow v. Schweiker*, 655 F.2d 645, 649 (5th Cir. 1981) (holding that the ALJ must resolve "the crucial subsidiary fact of the truthfulness of subjective symptoms and complaints").[3]  People with objectively identical conditions can experience significantly different levels of pain, and pain is more readily treated in some than in others.  "Reasonable minds may differ as to whether objective medical impairments could reasonably be expected to produce [the claimed] pain.  This determination is a question of fact which, like all factual findings by the [Commissioner], is subject only to limited review in the courts . . . ."  *Hand, supra,* at 1548-49.  It is within the ALJ's "realm of judging" to determine whether "the quantum of pain [a claimant] allege[s] [is] credible when considered in the light of other evidence."  *Arnold v. Heckler*, 732 F.2d 881, 884  (11th Cir. 1984).  Thus, a physician may be told by a patient that he or she is in pain, and the physician may believe it, but the physician's opinion is not binding on the ALJ.  The evidence as a

---

[3] Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. Pritchard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

whole, including the existence of corroborating objective proof or the lack thereof, and not just a physician's belief or the plaintiff's claims, is the basis for the ALJ's credibility determination.

Mr. Kelly contends that the ALJ failed to articulate specific reasons for questioning his credibility.   However, as with the first issue, above, the ALJ'S reasoning was not set out in his *conclusion* alone.   The record reflects that Mr. Kelly testified that he handled his personal care.   There was normal extension, normal lateral flexion, normal heel and toe walking, 90 degrees lumbar angle, and negative straight leg raising.   Mr. Kelly did not have surgery, and his pain was handled with ibuprofen, which is available over the counter.   Even Dr. Pearson recommended only ice, physical therapy and an Arizona brace.   The ALJ's conclusion was adequatetly stated, and was adequately supported by the evidence.   The ALJ did not err, and Mr. Kelly is not entitled to reversal on this ground.

3.    **Step Four and Five determinations.**

Finally, Mr. Kelly contends that the ALJ erred at Step Four in finding that Mr. Kelly could return to his past relevant work as a floor technician, and at Step Five in finding that Mr. Kelly was not disabled, using the grids as a framework.

Mr. Kelly argues that the job of floor technician does not appear in the *Dictionary of Occupational Titles* (DOT), and therefore the ALJ did not have sufficient evidence upon which to base his opinion.  The relevant regulation, SSR 82-62, provides that the Step Four determination:

> requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reasons for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources, such as employers, the Dictionary of Occupational Titles, etc., on the requirements of the work as generally performed in the economy.

Mr. Kelly contends that no such "careful appraisal" was made, and the ALJ failed to document any such appraisal in his decision.  In this regard, Mr. Kelly is correct.  The ALJ said nothing about Mr. Kelly's work duties as they actually existed.  Mr. Kelly testified that he had worked for roughly fifteen years as a floor technician, stripping and waxing floors.  The job entailed moving furniture out of rooms and pushing on heavy floor machines.  The machines were self propelled, but when working on slippery floors, he would sometimes have to push them. Some of the machines weighed as much as 800 pounds. The job involved bending, twisting, and standing.  He had also worked at a commercial laundry, drying and conditioning linens (Tr. 41-44).

Since the ALJ failed even to mention anything specific about Mr. Kelly's job as actually performed, his alternative was to consider the job as it is generally performed.  That is what he did, but as Mr. Kelly points out, he gave no explanation as to how he determined what the duties of the job entailed, either by reference to the DOT or otherwise.   Therefore, where this the only basis for the ALJ's

determination that Mr. Kelly could perform his past relevant work, Mr. Kelly might be entitled to reversal. However, the court need not decide that issue because the ALJ's finding under Step Five was appropriate.

In 1978 the Commissioner promulgated medical vocational guidelines ("grids") to help alleviate the need for vocational expert testimony to determine whether work existed in the national economy within a claimant's capabilities. 20 C.F.R. Part. 404, Subpart P, Appendix 2 § 200.00. "Where a plaintiff's qualifications correspond to the job requirements identified by a [grid] rule, the guidelines direct a conclusion as to whether work exists that the plaintiff could perform. If such work exists, the plaintiff is not considered disabled." *Heckler v. Campbell*, 461 U.S. 458, 462, 103 S.Ct. 1952,1955, 76 L.Ed.2d 66 (1983). However, "where any one of the findings of fact does not coincide with the corresponding criterion of a rule, the rule does not apply in that particular case …." 20 C.F.R. Part. 404, Subpart. P, Appendix 2 § 200.00(a). Thus, each of these findings must be supported by substantial evidence.

Mr. Kelly argues that the ALJ improperly relied on the grids in reaching his decision because he had erroneously rejected treating physician opinions, and had erroneously discounted his subjective complaints of pain. This argument fails because the court determined above that the ALJ's decision was supported on both these issues. Therefore, Mr. Kelly is not entitled to reversal on this ground.

Accordingly, it is respectfully RECOMMENDED that the decision of the Commissioner be AFFIRMED, that this action be DISMISSED and that the clerk be directed to close the file.

At Pensacola, Florida this 27th day of June, 2014.

/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts,* 858 F.2d 698, 701 (11th Cir. 1988).**